# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

DEANDRE LARON WASHINGTON,

        Petitioner/Defendant,

v.

UNITED STATES OF AMERICA,

        Respondent/Plaintiff.

Case No. CIV-12-188-RAW
(Underlying Case No. CR-09-036-RAW)

## ORDER & OPINION

Before the court is Deandre Laron Washington's motion pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct sentence [Docket No. 1]. On July 23, 2009, Petitioner was found guilty on Count 2 of the Indictment, charging him with conspiring to shoot a law enforcement officer to prevent his attendance or testimony in federal court proceedings against a co-conspirator in violation of 18 U.S.C. §§ 1512(a)(1)(A) and (a)(2).

Petitioner was sentenced on February 17, 2010, and the Judgment was entered on February 22, 2010. Petitioner appealed his conviction. On August 9, 2011, the Tenth Circuit affirmed his conviction. Petitioner filed a petition for a writ of certiorari with the Supreme Court on November 7, 2011. The Supreme Court denied the petition on January 9, 2012. Petitioner's motion is timely.[1]

---

[1] "A one-year period of limitation applies to [a] habeas petition. 28 U.S.C. § 2255. The limitation period runs from the date on which the judgment of conviction becomes final . . . ." United States v. Ramos, 150 Fed.Appx. 752, 753 (10th Cir. 2005) (citations omitted). In this case, the judgment of conviction became final when the Supreme Court denied the petition for a writ of certiorari on January 9, 2012. See Clay v. United States, 537 U.S. 522, 527 (2003); United States v. Prows, 448 F.3d 1223, 1227 (10th Cir. 2006). As this action was filed less than

Petitioner initially raised four grounds in his habeas motion. On February 28, 2014, Petitioner filed a motion to supplement his habeas motion to add another ground [Docket No. 32]. The court hereby grants the motion to add another ground. Petitioner has also filed a motion for appointment of counsel [Docket No. 37]. The court hereby denies that motion.[2]

**FACTUAL AND PROCEDURAL HISTORY**

In February 2009, Ronald Irving was arrested after a successful narcotics sting orchestrated by Lieutenant Bryan Stark, the head of the Muskogee Police Department's Special Investigations Unit (hereinafter "SIU"). That same month, Officer Stark received a note from a Muskogee County inmate, Durrell Collins, stating that someone was trying to have Officer Stark killed. When interviewed, Mr. Collins told authorities that Mr. Irving had contacted him in jail about arranging to have Officer Stark killed.

Mr. Collins also told authorities that Mr. Irving had first announced that he would pay up to $50,000 to anyone who would kill Officer Stark in 2006.[3] At the time, Mr. Collins suggested Petitioner might be interested, but nothing came of it. When both Mr. Collins and Mr. Irving were in jail in February 2009, Mr. Irving sent a note to Mr. Collins suggesting they move

---

a year after the judgment became final, it is timely.

[2]"[T]here is no right to counsel in collateral proceedings." United States v. Prows, 448 F.3d 1223, 1229 (10th Cir. 2006). Pursuant to § 2255(g) and 18 U.S.C. § 3006A(a)(2)(B), the court *may* appoint counsel if it determines the interests of justice so require. "The decision to appoint counsel is left to the sound discretion of the district court." Engberg v. Wyoming, 265 F.3d 1109, 1122 (10th Cir. 2001). As the court has determined that an evidentiary hearing is not required in this case and that the interests of justice do not so require appointment of counsel, in its discretion, the court declines to appoint counsel.

[3]Nathan Simmons' testimony at trial corroborated this fact.

2

forward with the plan. Mr. Collins and Mr. Irving then spoke about the plan on cell phones that had been smuggled into the jail. The cell phones were in the possession of Milton Warrior and Sean Warrior, cousins, who were also in the jail. Sean Warrior was Mr. Irving's cell mate. Milton Warrior was in a cell close to Mr. Collins. The Warrior cousins allowed Mr. Irving and Mr. Collins to use their phones to speak to each other.

After speaking to federal investigators, Mr. Collins agreed to work with them and go along with Mr. Irving's plan. Mr. Irving supplied money to bond Mr. Collins out of jail. Mr. Collins then contacted Petitioner. Mr. Collins and Petitioner met on March 9, 2009 to discuss details. Mr. Collins informed Petitioner that Mr. Irving would pay $50,000 to anyone who would kill Officer Stark and that $25,000 would be paid up front.

Petitioner agreed to kill Officer Stark for the payment. He made several explicit statements to Mr. Collins expressing his intent to kill Officer Stark. The jury heard audio recordings of the conversations between Petitioner and Mr. Collins. Ultimately, Petitioner and Mr. Collins agreed that they would travel to Muskogee together on March 11, 2009. Mr. Collins was to acquire a gun upon their arrival in Muskogee, and Petitioner was to shoot Officer Stark the same day. Petitioner and Mr. Collins were stopped as they entered into Muskogee. Petitioner was arrested. He was carrying a pair of surgical exam gloves, but no weapon.

On March 18, 2009, the Government filed a two count Indictment against Petitioner and Ronald Irving. Count 1 of the Indictment charged Ronald Irving with possession with intent to distribute crack cocaine. Count 2 charged both Ronald Irving and Petitioner with conspiring to shoot a law enforcement officer to prevent his attendance or testimony in federal court proceedings in violation of 18 U.S.C. §§ 1512(a)(1)(A) and (a)(2).

At trial, Petitioner testified in his defense. He testified that Mr. Collins contacted him about killing Officer Stark and said he would get $25,000 up-front payment. He told the jury that he never intended to kill Officer Stark, but instead was pretending to go along with Mr. Collins' plan to get the $25,000 up-front payment. Petitioner testified that the graphic things he said to Mr. Collins were to convince Mr. Collins that he intended to kill Officer Stark so that he could get the $25,000. He stated that the surgical gloves were a "prop" to make the scam more believable. He testified that after acquiring the $25,000 up-front payment, he would have gone back to Tulsa without killing Officer Stark and that if necessary, he would have given Mr. Collins $5,000 to pretend it never happened. Petitioner admitted that he never said no to Mr. Collins and that every time they spoke, Petitioner reiterated that he would kill Officer Stark.

On July 23, 2009, both defendants were found guilty of the charges against them in the Indictment. On February 17, 2010, Petitioner was sentenced to 360 months in the custody of the United States Bureau of Prisons. Petitioner filed his notice of appeal on March 5, 2010. On appeal, Petitioner argued: (1) the indictment failed to charge a crime; (2) the indictment was duplicitous; (3) there was insufficient evidence introduced at trial to support his conviction; and (4) the district court abused its discretion in excluding the testimony of a defense witness who was present in the courtroom during trial in violation of the Rule of Sequestration. The Tenth Circuit affirmed the conviction.

**PETITIONER'S MOTION**

Petitioner argues that his attorney was ineffective for failing to: (1) appeal the denial of the requested entrapment instruction; (2) appeal the use of 404(b) evidence that substantially

4

prejudiced him; (3) challenge improper conduct before the Grand Jury; and (4) challenge the official victim sentencing enhancement under U.S.S.G. § 3A1.2(a). Petitioner also argues that he is actually innocent under two recent Supreme Court cases that limited the scope of the witness tampering statute.

**INEFFECTIVE ASSISTANCE CLAIMS**

In order to prevail on his claims of ineffective assistance of counsel, Petitioner must satisfy the two-prong test set out in Strickland v. Washington, 466 U.S. 668 (1984). Under this test, Petitioner must show both that his counsel's performance was deficient and that the deficiency prejudiced his defense. Id. at 687.

He must first show that his counsel's "representation fell below an objective standard of reasonableness." Id. at 688. "Judicial scrutiny of counsel's performance must be *highly deferential*. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689 (emphasis added).

A reviewing court must make every effort "to evaluate the conduct from counsel's perspective at the time." Id. Moreover, a convicted defendant "must overcome the *presumption* that, under the circumstances, the challenged action '*might be considered sound trial strategy*.'" Id. (citation omitted) (emphasis added). "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." Id.

5

If Petitioner gets past the first hurdle, he must then show that the error had an effect on the judgment in his case. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. Even if an error had some conceivable effect, that is not enough to set aside a judgment. Id. at 693. Instead, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

While a defendant must prove both deficient performance and prejudice before he is entitled to relief, the court need not address the elements in that order. Id. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result." Id. Moreover, "the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment." Id.

**Grounds 1 & 2 – Failing to Appeal – Entrapment Instruction & 404(b) Evidence**

Petitioner argues that his counsel was ineffective in failing to appeal the denial of the requested entrapment instruction. He also argues that his counsel was ineffective in failing to appeal the use of 404(b) evidence that substantially prejudiced him.

It is difficult to show ineffective assistance for failure to raise an issue on appeal "because counsel 'need not (*and should not*) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal.'" Cargle v.

6

Mullin, 317 F.3d 1196, 1202 (quoting Smith v. Robbins, 528 U.S. 259, 288 (2000) (emphasis added).

> [The] weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy.... [E]very weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court. For these reasons, a lawyer who throws in every arguable point—"just in case"—is likely to serve her client less effectively than one who concentrates solely on the strong arguments.

LaFevers v. Gibson, 182 F.3d 705, 722 (quoting Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989)).

In analyzing a claim of ineffectiveness for failure to raise an issue on appeal, the court looks to "'the merits of the omitted issue,' . . . generally in relation to the other arguments counsel did pursue." Cargle, 317 F.3d at 1202 (quoting Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001)).

> If the omitted issue is so plainly meritorious that it would have been unreasonable to winnow it out even from an otherwise strong appeal, its omission may directly establish deficient performance; if the omitted issue has merit but is not so compelling, the case for deficient performance is more complicated, requiring an assessment of the issue relative to the rest of the appeal, *and deferential consideration must be given to any professional judgment involved in its omission*; of course, if the issue is meritless, its omission will not constitute deficient performance.

Id. (emphasis added).

*Entrapment Instruction*

At the conclusion of trial, Petitioner's counsel argued that the jury should receive an entrapment instruction. He argued that the instruction should be included because Petitioner testified that Mr. Collins persuaded him to go to Muskogee to kill Officer Stark. The court ruled that there was no evidence to support an entrapment instruction. Petitioner argues that he

7

instructed his counsel to and that his counsel should have raised this issue on appeal.

"[A] valid entrapment defense has two related elements: government inducement of the crime, and a lack of predisposition on the part of the defendant to engage in the criminal conduct." Mathews v. United States, 485 U.S. 58, 63 (1988). A defendant is entitled to an entrapment instruction only if "there exists evidence sufficient for a reasonable jury to find in his favor." Id. As to the principal element of predisposition, the focus is on whether a defendant was an "unwary innocent" or rather an "unwary criminal," i.e. someone "who readily availed himself of the opportunity to perpetrate the crime." Id.

Government inducement "is government conduct which creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense." United States v. Vincent, 611 F.3d 1246, 1250 (10th Cir. 2010) (quoting United States v. Scull, 321 F.3d 1270, 1275 (2003)). "Government inducement may take the form of persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship." Id. (quoting United States v. Ortiz, 804 F.2d 1161, 1165 (10th Cir. 1986). "Evidence that the government initiated the contact with the defendant, proposed the crime, or solicited or requested the defendant to engage in criminal conduct, *standing alone, is insufficient to constitute inducement*." Id. (emphasis added).

At the conclusion of Petitioner's trial, there was not sufficient evidence for a reasonable jury to find entrapment. While Mr. Collins was working with federal investigators when he contacted Petitioner about killing Officer Stark in return for payment from Mr. Irving, that fact standing alone is insufficient to constitute inducement. There was no evidence that either the Government or Mr. Collins did anything that would create a substantial risk that an undisposed

8

person or otherwise law-abiding citizen would attempt to kill a law enforcement officer. As the Government argued, no reasonable jury could have concluded that the offer of $50,000 would create a substantial risk that an otherwise law-abiding citizen would conspire to kill a law enforcement officer or any person.

Petitioner was not an "unwary innocent," but instead an "unwary criminal" who readily availed himself of the opportunity to commit the crime. Petitioner did not once waiver, but instead repeatedly assured Mr. Collins that he was ready, willing and able to kill Officer Stark and looking forward to the $25,000 up-front payment. Petitioner argued that his intent was only to get the $25,000 up-front payment and not follow through with his promise to kill Officer Stark. The jury did not believe him. Moreover, this argument has no bearing on the entrapment issue.[4]

The court finds that the entrapment instruction issue was meritless. If it had any merit at all, relative to the issues Petitioner's counsel raised on appeal, it was *very* weak. As it must, the court gives deferential consideration to Petitioner's counsel's judgment. Petitioner has not shown that his counsel's performance was deficient. Even if Petitioner directed his counsel to raise the issue on appeal, he suffered no prejudice from his counsel not raising the meritless issue. Petitioner's motion is DENIED as to his first ground.

*404(b) Evidence*

---

[4]Petitioner argues that he only wanted the up-front payment, that Mr. Collins was the only one talking about getting a gun and that this amounts to entrapment. This does not follow. As noted above, to entrap a person, the Government must create a substantial risk that an otherwise law-abiding citizen would commit the offense. The Government did not. Petitioner readily agreed to kill Officer Stark for $50,000. An otherwise law-abiding citizen would not have.

9

During the trial, defense counsel raised the issue of entrapment and elicited testimony that the only person who spoke of a gun was Mr. Collins, not Petitioner. Thereafter, the Government sought to introduce 404(b) evidence to show intent. Specifically, the Government requested the court allow Milton Warrior to testify that Petitioner never traveled with a gun because he was a felon. The court found that the testimony was relevant and more probative than prejudicial.

Mr. Warrior testified that when he traveled with Petitioner, Petitioner would never travel with a firearm because it could get him into trouble. He testified that upon arrival at a destination, on some occasions Petitioner would gain possession of a firearm. When asked on what occasions Petitioner would be in possession of a firearm, Mr. Warrior testified that Petitioner would have a firearm "just in case something happened, he would be there to protect people, you know, basically used as a muscle." He further testified that Petitioner was the "go-to guy," i.e. "the man to take care of business."

Immediately after this testimony, outside the presence of the jury, defense counsel moved for a mistrial. The court denied defense counsel's motion and ruled again that the testimony was relevant and more probative than prejudicial. Contrary to Petitioner's §2255 motion, defense counsel did renew the motion after the Government rested and again after the defense rested. The court denied the motion. Defense counsel did not, as Petitioner argues, raise this issue on appeal.

In determining whether to admit 404(b) evidence, courts are to apply the four-part test announced in <u>Huddleston v. United States</u>, 485 U.S. 681, 691-92 (1988). First, the evidence must be offered for a proper purpose. <u>Id</u>. at 691. Second, the evidence must be relevant. <u>Id</u>.

Third, the probative value of the similar acts must not be substantially outweighed by the potential for unfair prejudice. Id. Fourth, if requested, the court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. Id. at 691-92.

Mr. Warrior's testimony was offered for a proper purpose – to prove intent. The testimony was relevant. The probative value of the testimony objected to by defense counsel was not substantially outweighed by its potential for unfair prejudice. Mr. Warrior's testimony was that when he traveled with Petitioner, Petitioner traveled without a firearm to avoid trouble and gained access to a firearm upon reaching his destination. This testimony went to intent, was relevant and probative. While Mr. Warrior also testified that Petitioner was the "muscle" or "go-to guy," Petitioner's own explicit words to Mr. Collins were far more detrimental to his case. The court included an instruction regarding other acts. Defense counsel did not request the instruction or a more specific instruction so as not to highlight the 404(b) evidence for the jury.

The 404(b) issue was also meritless. If it had any merit at all, relative to the issues Petitioner's counsel raised on appeal, it was weak. As it must, the court gives deferential consideration to Petitioner's counsel's judgment. Petitioner has not shown that his counsel's performance was deficient. Petitioner has not shown prejudice. Petitioner's motion is DENIED as to his second ground.

**Ground 3 – Conduct Before Grand Jury**

Petitioner argues that there was improper conduct before the grand jury and that his counsel was ineffective in failing to challenge it. Specifically, he argues that Agent Mike Beaver lied to the grand jury when he referred to Petitioner as a "known shooter" and a "hit man."

11

Petitioner further argues that Agent Beaver lied when in summarizing the audio recordings, he stated that Petitioner told Mr. Collins that he was going out of town and wanted to kill Officer Starks before he left. Petitioner argues that the grand jury should have been able to listen to the tape recordings instead.

Petitioner also argues that Agent Beaver lied when he stated that Mr. Collins did not know at the time where the gun would be picked up. He argues that Agent Beaver tried to cover up the fact that the investigation was a "sting operation." Finally, Petitioner argues that if the grand jury had been aware that Petitioner was not a "hit man," that Mr. Collins would be obtaining the firearm instead of Petitioner, and that Petitioner was entrapped, it likely would not have indicted him.

Mr. Collins testified at trial that at some point Petitioner told him that he was going out of town. Petitioner corroborated this testimony. Petitioner also testified he just wanted to get the money as soon as possible. Mr. Collins testified at trial that he was to acquire the gun once he and Petitioner arrived in Muskogee. Mr. Collins testified that Petitioner could not find a gun and was going to look around for one. At trial, Mr. Warrior testified that Petitioner was the "go-to guy," "the man to take care of business."

Agent Beaver did not lie to the grand jury. He merely summarized the case against Petitioner, including what he heard on the tape recordings of conversations between Petitioner and Mr. Collins. "[S]ummaries of evidence given before the grand jury are permissible and often helpful." United States v. Kilpatrick, 821 F.2d 1456, 1470 (10th Cir. 1987).

"An indictment may be dismissed for prosecutorial misconduct which is flagrant to the point that there is *some significant infringement on the grand jury's ability to exercise*

12

*independent judgment*." United States v. Kilpatrick, 821 F.2d 1456, 1465 (10th Cir. 1987) (citation omitted)(emphasis in original). The court finds that there was no prosecutorial misconduct. Furthermore, Agent Beaver's statements do not amount to any significant infringement on the grand jury's ability to exercise independent judgment. Accordingly, Petitioner has not shown that his counsel's performance was deficient or that he suffered any prejudice. Petitioner's motion is DENIED as to his third ground.

**Ground 4 – Official Victim Sentence Enhancement**

Petitioner argues his counsel was ineffective in failing to challenge the official victim sentencing enhancement under U.S.S.G. § 3A1.2(a). Petitioner received a three-level sentencing enhancement under § 3A1.2(a) of the United States Sentencing Guidelines because "(1) the victim was . . . a government officer or employee, . . . and (2) the offense of conviction was motivated by such status . . . ." U.S.S.G. § 3A1.2(a). Application Note 3 directs:

> "Motivated by such status", for purposes of subsections (a) and (b), means that the offense of conviction was motivated by the fact that the victim was a government officer or employee . . . . This adjustment would not apply, for example, where both the defendant and victim were employed by the same government agency and the offense was motivated by a personal dispute. This adjustment also would not apply in the case of a robbery of a postal employee because the offense guideline for robbery contains an enhancement (§ 2B3.1(b)(1)) that takes such conduct into account.

Officer Stark is a government officer or employee. Petitioner was convicted of conspiring to shoot Officer Stark to prevent his attendance or testimony in federal court proceedings in violation of 18 U.S.C. §§ 1512(a)(1)(A) and (a)(2). It is abundantly clear that the official victim enhancement was properly applied. Petitioner has not shown that his counsel's performance was deficient or that he suffered any prejudice. Petitioner's motion is DENIED as to his fourth ground.

13

**Ground 5 – Actual Innocence**

Petitioner argues that he is actually innocent under two "recent" Supreme Court cases – Arthur Andersen, LLP v. United States, 544 U.S. 696 (2005)[5] and Fowler v. United States, 131 S.Ct. 2045 (2011)[6] – that limited the scope of the witness tampering statute. More specifically, Petitioner relies upon United States v. Tyler, 732 F.3d 241 (3rd Cir. 2013), which applies Arthur Andersen and Fowler.[7]

In Tyler, Tyler was convicted of witness tampering by murder and by intimidation in violation of 18 U.S.C. § 1512. Tyler argued that under Arthur Andersen, his conduct was non-criminal "because there was no evidence from which the Government could establish a nexus with an official proceeding." Tyler, 732 F.3d at 249. The Third Circuit held that there was sufficient evidence to support Tyler's actual innocence claim and remanded the case to the district court to determine whether there was sufficient evidence to convict. Id. at 250-53.

---

[5]In Arthur Andersen, the Supreme Court held that when a person is charged with violating 18 U.S.C. § 1512(b)(2)(A) and (B), which makes it unlawful to "'knowingly us[e] intimidation or physical force, threate[n], or corruptly persuad[e] another person . . . with intent to . . . cause' that person to 'withhold' documents from, or 'alter' documents for use in, an 'official proceeding,'" the jury instructions should include the "corruptly" element and must direct the jury to find a nexus between the "persuasion" to destroy documents and an official proceeding. Arthur Andersen, 544 U.S. at 698-707 (quoting 18 U.S.C. § 1512(b)(2)).

[6]In Fowler, the Supreme Court held that for a conviction under 18 U.S.C. § 1512(a)(1)(C), which makes it a crime "to kill another person, with intent to . . . prevent the communication by any person to a law enforcement officer . . . of the United States," the Government "must show that there was a *reasonable likelihood* that a relevant communication would have been made to a federal officer." Fowler, 131 S.Ct. at 2048 (quoting 18 U.S.C. § 1512(a)(1)(C))(emphasis in original).

[7]The court notes that Arthur Anderson was decided long before this case, and Fowler was decided before the conclusion of Petitioner's appeal. Petitioner has provided no explanation for why he did not raise these issues before his trial, during his trial, at his appeal or before his appeal was decided.

Petitioner argues that he is actually innocent because "at the time . . . the alleged witness tampering plan between Ronald Irving and Durrell Collins was hatched, no federal proceeding had commenced." He argues that therefore, "the federal nature of the offense was absent." In fact, Officer Stark testified that Mr. Irving was arrested around February 14, 2009, and a federal complaint was filed against him on February 24, 2009. Mr. Collins testified that Mr. Irving contacted him about arranging the hit around February 15, 2009. Petitioner was arrested on March 11, 2009. Clearly, the federal proceeding had begun and a reasonable jury could find a nexus.

Evidence was presented at trial that Petitioner was aware that Officer Stark was a police officer and aware of the reason Mr. Irving's wanted the hit. The jury instructions in the case against Petitioner required the jury to find that Petitioner (1) attempted to kill Bryan Stark; and (2) acted with intent to prevent the attendance or testimony of Bryan Stark in an official proceeding. There was sufficient evidence for the jury to find the nexus as instructed. Petitioner's motion is DENIED as to his fifth ground.

**CONCLUSION**

As stated above, Petitioner's motion to supplement his habeas motion [Docket No. 32] is GRANTED. Petitioner's motion for appointment of counsel [Docket No. 37] is DENIED. For the reasons stated above, Petitioner's habeas motion is DENIED on all five grounds.

It is so Ordered this 31st day of July, 2014.

Ronald A. White
United States District Judge
Eastern District of Oklahoma